Ali S. Razai (SBN 246922)
ali.razai@morganlewis.com
Christian D. Boettcher (SBN 342950)
christian.boettcher@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
600 Anton Boulevard, Suite 1800
Costa Mesa, CA  92626-7653
Tel: +1.714.830.0600
Fax: +1.714.830.0700

Brian P. O'Donnell (*Pro Hac Vice to be filed*)
brian.odonnell@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
Tel: +1.312.324.1000
Fax: +1.312.324.1001

*Attorneys for Plaintiff*
TROVE BRANDS, LLC d/b/a
THE BLENDERBOTTLE COMPANY AND
RUNWAY BLUE, LLC

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| TROVE BRANDS, LLC d/b/a THE BLENDERBOTTLE COMPANY, a Utah limited liability company, and RUNWAY BLUE, LLC, a Utah limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> RUMI, LLC, a Puerto Rico limited liability company, and DIUS, LLC, a Louisiana limited liability company, <br><br> Defendants. | Civil Action No. <br><br> **COMPLAINT FOR TRADE DRESS INFRINGEMENT, TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, AND UNFAIR COMPETITION** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Trove Brands, LLC, d/b/a The BlenderBottle Company ("Trove") and Runway Blue, LLC ("Runway Blue") (collectively, "BlenderBottle" or "Plaintiffs") hereby complain of Defendants Rumi, LLC ("Rumi") and Dius, LLC ("Dius") (collectively, "Defendants") and allege as follows:

## NATURE OF THE ACTION

1.    BlenderBottle seeks injunctive relief and damages for acts of trade dress infringement, trademark infringement, false designation of origin, passing off, and unfair competition, engaged in by Defendants in violation of the laws of the United States and the State of California.

## THE PARTIES

2.    Plaintiff Trove Brands, LLC, doing business as the BlenderBottle Company is a limited liability company organized and existing under the laws of the State of Utah, with its principal place of business located at 250 South 850 East, Lehi, Utah 84043.

3.    Plaintiff Runway Blue, LLC is a limited liability company organized and existing under the laws of the State of Utah, with its principal place of business located at 250 South 850 East, Lehi, Utah 84043.

4.    BlenderBottle is informed and believes and, based thereon, alleges that Defendant Rumi, LLC is a limited liability company organized and existing under the laws of Puerto Rico, with a principal place of business at 151 Calle de San Francisco, Ste. 200, PMB 0412, San Juan, Puerto Rico 00901.

5.    BlenderBottle is informed and believes and, based thereon, alleges that Defendant Dius, LLC is a limited liability company organized and existing under the laws of Louisiana, with a principal place of business at 105 Lomond Ave., Lafayette, LA 70508.

## JURISDICTION AND VENUE

6.    This Court has original subject matter jurisdiction over the claims in this action that relate to trade dress infringement, trademark infringement, false designation of origin, passing off, and federal unfair competition pursuant to 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. §§ 1114, 1116, 1121(a), and 1125(a), as these claims arise under the laws of the United States.  The Court has supplemental jurisdiction over the claims that arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

7.    This Court has personal jurisdiction over Defendants because Defendants have a continuous, systematic, and substantial presence within this judicial district.  For example, Defendants have been selling and offering for sale infringing products in this judicial district, and committing acts of infringement in this judicial district, including but not limited to, selling infringing products to consumers and/or retailers in this district and selling into the stream of commerce knowing such products would be sold in this district. These acts form a substantial part of the events or omissions giving rise to BlenderBottle's claims.

8.    Venue is proper in this judicial district for Defendant Rumi, LLC under 28 U.S.C. § 1391 at least because Defendant Rumi, LLC resides in this judicial district by virtue of doing business in this district and because a substantial part of the events giving rise to BlenderBottle's claims occurred in this Judicial District.

9.    Venue is proper in this judicial district for Defendant Dius, LLC under 28 U.S.C. § 1391(b) because Defendant Dius, LLC resides in this Judicial District by virtue of doing business within this Judicial District and because a

substantial part of the events giving rise to BlenderBottle's claims occurred in this Judicial District.

### GENERAL ALLEGATIONS

10. BlenderBottle revolutionized the way supplements are mixed and consumed. Through the tireless efforts of its designers and engineers over nearly two decades, BlenderBottle pioneered innovative technology and path-breaking designs to create premium products that help simplify everyday life. Available in more than 90 countries worldwide and in over 60,000 retail locations, BlenderBottle's shakers have become the go-to products for outdoor enthusiasts, gym goers, serious protein and supplement drinkers and more. Products embodying BlenderBottle's proprietary designs and technology have been lauded by consumers and the media, including *Good Morning America*, *Reader's Digest*, *Self*, *the Today Show*, *Men's Fitness*, and others.

11. BlenderBottle protects its substantial investment in innovation and design from imitators with its intellectual property rights.

12. BlenderBottle manufactures and sells shakers bearing a distinctive trade dress in the overall design of its shaker bottle lid (the "Lid Trade Dress"). A picture of BlenderBottle's Lid Trade Dress is depicted below.



13. BlenderBottle has also obtained U.S. Trademark Registration No. 6,800,019 for its lid trade dress (the "Lid Trade Dress"). Runway Blue is listed as the registrant of U.S. Trademark Registration No. 6,800,019. Trove is the exclusive licensee of U.S. Trademark Registration No. 6,800,019 and has been

- 3 -

granted all rights thereunder, including the right and standing to enforce U.S. Trademark Registration No. 6,800,019. A true and correct copy of U.S. Trademark Registration No. 6,800,019 is attached hereto as **Exhibit 1**.

14. U.S. Trademark Registration No. 6,800,019 is valid, unrevoked, and on the Principal Register. As such, BlenderBottle is entitled to a presumption that the Lid Trade Dress is valid and enforceable.

15. The Lid Trade Dress is the overall commercial impression formed by the following distinctive elements: a bottle lid with a recessed domed top from which a conical spout protrudes on one side and a pair of brackets on the opposing side and the brackets host a pivoting arm containing a circular spout closure element.

16. The Lid Trade Dress serves to identify and distinguish BlenderBottle's products from those of others. In addition to its rights derived from the registration of the Lid Trade Dress on the Principal Register, BlenderBottle has strong common law rights in the Lid Trade Dress. The Lid Trade Dress has acquired secondary meaning.

17. Customers readily recognize the Lid Trade Dress as a distinctive designation of the origin of BlenderBottle's products. The public recognizes that products bearing the Lid Trade Dress constitute high-quality products that conform to the specifications created by BlenderBottle.

18. The elements of the Lid Trade Dress are distinctive and have been used by BlenderBottle as a source indicator since BlenderBottle's first use of the Lid Trade Dress in 2003.

19. BlenderBottle manufactures and sells shakers bearing a distinctive trade dress in the overall design of its shaker bottle (the "Bottle Trade Dress"). An example of BlenderBottle's Bottle Trade Dress is depicted below.



20. The Bottle Trade Dress is the overall commercial impression formed by the following distinctive elements:

    a. a generally cylindrical bottle that is taller than is wide;

    b. a top lid element with a smooth, cylindrical lower portion with a rounded upper end;

    c. a radially recessed domed portion of the lid above the cylindrical portion;

    d. a conical spout that rises from one side of the dome;

    e. a pair of brackets on another side of the dome that, when viewed from the side, have straight sides that merge into a rounded upper end;

    f. a generally symmetrical arrangement of the spout and brackets such that, when viewed from the side, the spout and brackets extend from opposite sides of the recessed portion of the lid, extend from approximately the same height on the recessed portion of the lid, and extend to approximately the same height above the recessed portion of the lid's top; and

    g. a flip-cap with a cylindrical end that lies between the brackets; a plank portion with a curved end that forms a bridge between the brackets and spout; and a rim with a circular cross-section that extends down from the bottom of

- 5 -

the plank at the spout end.

21.    The Bottle Trade Dress serves to identify and distinguish BlenderBottle's products from those of others. BlenderBottle has strong common law rights in the Bottle Trade Dress. The Bottle Trade Dress has acquired secondary meaning.

22.    Customers readily recognize the Bottle Trade Dress as a distinctive designation of the origin of BlenderBottle's products.  The public recognizes that products bearing the Bottle Trade Dress constitute high-quality products that conform to the specifications created by BlenderBottle.

23.    The Bottle Trade Dress is distinctive and has been used by BlenderBottle as a source indicator since BlenderBottle's first use of the Bottle Trade Dress in 2003.

24.    Additionally, as a result of BlenderBottle's significant sales, advertising, widespread use and display of the Bottle Trade Dress, the Bottle Trade Dress has established strong secondary meaning and extensive goodwill. The Bottle Trade Dress has great value as a specific identifier of BlenderBottle's products.

25.    BlenderBottle has also obtained U.S. Trademark Registration No. 6,245,626 for its agitator trade dress (the "Agitator Trade Dress"). A true and correct copy of U.S. Trademark Registration No. 6,245,626 is attached hereto as **Exhibit 2.**

26.    U.S. Trademark Registration No. 6,245,626 is valid, unrevoked, and on the Principal Register. As such, BlenderBottle is entitled to a presumption that the Agitator Trade Dress is valid and enforceable.

27.    BlenderBottle manufactures and sells agitators bearing its registered Agitator Trade Dress. The Agitator Trade Dress is distinctive in its overall design. A picture of BlenderBottle's Agitator Trade Dress is provided

- 6 -

below.



28.    The Agitator Trade Dress is a single length of metal wire formed to symmetrically define the shape of a sphere.

29.    Since 2000, BlenderBottle has used the distinctive trademark BLENDER BALL® in connection with the advertising, marketing, selling, and offering for sale of its shaker cups and agitators.

30.    Since then, BlenderBottle has extensively marketed its shaker cups and agitators using the BLENDER BALL® mark, including, for example, on social media, through its website, and in point-of-sale displays.

31.    BlenderBottle has also obtained U.S. Trademark Registration No. 3,515,591 for the mark BLENDER BALL® (the "'591 Registration). A true and correct copy of U.S. Trademark Registration No. 3,515,591 is attached hereto as **Exhibit 3.**

32.    Under 15 U.S.C. § 1065, the '591 Registration is incontestable.

33.    As a result of BlenderBottle's long, continuous, extensive, and exclusive use of the BLENDER BALL® mark, as well as its marketing, promotion, and sale of products under the mark, the public recognizes the BLENDER BALL® mark as identifying products that originate from or are otherwise associated exclusively with BlenderBottle. BlenderBottle has spent enormous time, effort, and expense to create valuable goodwill in the BLENDER BALL® mark.

34.    BlenderBottle's products bearing the Lid Trade Dress, Bottle Trade

Dress, Agitator Trade Dress, and BLENDER BALL® Mark are available in more than 90 countries worldwide and in over 60,000 retail locations. For example, BlenderBottle's products bearing the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and BLENDER BALL® Mark are sold in numerous major U.S. retailers such as Costco, Sam's Club, Target, Walmart, GNC, Amazon, Dick's Sporting Goods, and Vitamin Shoppe, among many others.

35. BlenderBottle's products bearing the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and BLENDER BALL® Mark have received significant unsolicited media attention. Products bearing the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and BLENDER BALL® Mark have been lauded by consumers and the media, including *Good Morning America*, *Shape*, *Good Housekeeping*, *Reader's Digest*, *Self*, *the Today Show*, *Muscle & Fitness*, *Men's Fitness*, *Nutrition Express*, *Amazing Wellness*, *Healthy Magazine*, *Outside Magazine*, *Backpacker Magazine*, *Daily Herald*, *EveryDay With Rachael Ray*, *Flex*, *Health & Beauty*, *Healthy Living*, *Muscle & Performance*, *Oxygen*, *Better Homes & Gardens*, *Climbing Magazine*, and others.

36. Numerous celebrities have been photographed using BlenderBottle's products bearing the Lid Trade Dress, Bottle Trade Dress, and Agitator Trade Dress, including Justin Bieber, Hugh Jackman, Scarlett Johansson, Shia LaBeouf, Dwayne "The Rock" Johnson, Michael B. Jordan, and Terry Crews, among others.

37. BlenderBottle extensively advertises and promotes its products bearing the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and BLENDER BALL® Mark, including through its website and social media sites, trade shows, flyers, and advertisements.

38.     BlenderBottle has spent millions of dollars advertising its products bearing the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and BLENDER BALL® Mark.

39.     BlenderBottle is the clear market leader in the shaker cup market, in large part through the popularity of its products that bear the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and BLENDER BALL® Mark.

40.     BlenderBottle has derived hundreds of millions in revenues in the United States from sales of products bearing the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and BLENDER BALL® Mark.

41.     As a result of BlenderBottle's widespread use and display of the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and BLENDER BALL® Mark in association with its shaker bottles and agitators, (a) the public has come to recognize and identify shakers and agitators bearing the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and BLENDER BALL® Mark as emanating from BlenderBottle, (b) the public recognizes that shakers and agitators bearing the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and BLENDER BALL® Mark constitute high quality products that conform to the specifications created by BlenderBottle, and (c) the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and BLENDER BALL® Mark have established strong secondary meaning and extensive goodwill since at least before Defendants' adoption and first use of its shaker bottles, lids and agitators that use trade dress and trademarks that are confusingly similar to the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and BLENDER BALL® Mark.

42.     The Lid Trade Dress is not functional.   The design features embodied in the Lid Trade Dress are not essential to the function of the product. The Lid Trade Dress is not in its particular shape because it works better in that shape.   There are alternative shapes and structures that perform as well as the

Lid Trade Dress.  Alternatives to the Lid Trade Dress can be found in numerous commercially available products.

43.    The Bottle Trade Dress is not functional.  The design features embodied by the Bottle Trade Dress are not essential to the function of the product.  A container that allows one to combine powders and liquids and that also serves as a drink dispenser can have many different forms and shapes.  The Bottle Trade Dress is not in its particular shape because it works better in that shape.    There are numerous alternative shapes and structures that allow a consumer to combine powders and liquids and use them as a drink dispenser.

44.    Examples of commercially available alternatives to the Lid Trade Dress and Bottle Trade Dress are depicted in the table below:

| "*PUSHLIMITS Designed by Artoid*" product | "*Rubbermaid® SHAKER BOTTLE*" product |
|---|---|
|  | |

| "*Contigo® LEAK-PROOF SHAKER BOTTLE*" product | "*BluePeak Shaker Bottle*" product |
|---|---|
|  |  |
| "*Huel Shaker Bottle*" product | "*Lava Fitness Shaker Bottle*" product |
|  |  |
| "*Vortex Shaker Bottle*" product | "*Shakesphere Tumbler View Shaker Bottle*" product |
|  |  |

"*WeightWatchers Shaker Bottle*" product



"*Aladdin Shaker Bottle*" product



"*Coleman Shaker Bottle*" product

"*Constant Contact Shaker Bottle*" product







45.     These third-party products show that there are many different design decisions that go into creating a bottle and lid, and that the Lid Trade Dress and Bottle Trade Dress are the result of decisions regarding ornamentation.  None of the alternatives shown above have the same overall commercial impressions formed by the Lid Trade Dress or Bottle Trade Dress.  Further, BlenderBottle's exclusive right to use the Lid Trade Dress and Bottle Trade Dress does not put competitors at a significant non-reputation related disadvantage because there are numerous alternative designs.

46.     Further, the design features of the Lid Trade Dress are not comparatively simple or inexpensive to manufacture because the elements are complex.  The Lid Trade Dress is more expensive to manufacture than other

lids.  The design features of the Lid Trade Dress do not affect the quality of the product.  The design of the Lid Trade Dress is not a competitive necessity.

47.    Similarly, the design features of the Bottle Trade Dress are not comparatively simple or inexpensive to manufacture because the elements are complex.  For example, the lid shown in the Bottle Trade Dress is more expensive to manufacture than other bottles.  The design features of the Bottle Trade Dress do not affect the quality of the product.  The design of the Bottle Trade Dress is not a competitive necessity.

48.    The Agitator Trade Dress is not functional. The design features embodied by the Agitator Trade Dress are not essential to the function of the product.  The Agitator Trade Dress is not in its particular shape because it works better in that shape.  There are alternative shapes and structures that perform as well as the Agitator Trade Dress.  Alternatives to the Agitator Trade Dress can be found in numerous commercially available products.  Several examples of commercially available alternatives are depicted in the table below:

|  |  |  |
|---|---|---|
| Agitator from "*TOOFEEL SHAKER 700ML*" product | Agitator from "*PUSHLIMITS Designed by Artoid*" product | Agitator from "*PUSHLIMITS Designed by Artoid*" product |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | | |
|---|---|---|
|  |  |  |
| Agitator from "*Rubbermaid® SHAKER BOTTLE*" product | Agitator from "*BOTTLED JOY*" product | Agitator from "*Muscle Pound*" product |
|  |  |  |
| Agitator from "contigo® *LEAK-PROOF SHAKER BOTTLE*" | Agitator from "*MAINSTAYS Shaker Bottle*" | Agitator from "*UTOPIA SHAKER BOTTLE*" |







| Agitator from "*BluePeak Shaker Bottle*" product | Agitator from "*BluePeak Shaker Bottle*" product | Agitator from "*BluePeak Shaker Bottle*" product |







| Agitator from "*Aladdin Shaker Bottle*" product | Agitator from "*Coleman Shaker Bottle*" product | Agitator from "*Constant Contact shaker bottle*" product |

49.     The elements of the Agitator Trade Dress do not make the product cheaper or easier to manufacture, and do not affect the quality of the product. The design of the Agitator Trade Dress is not a competitive necessity. Instead, the Agitator Trade Dress serves to create source recognition in the consumer's mind.

50.     Further, the Agitator Trade Dress' design increases the complexity and cost of production in comparison to other agitators. Other agitators, including many of the examples shown above, utilize less expensive materials and methods of manufacturing to achieve the same function.

51.    The Bottle Trade Dress, Lid Trade Dress, and Agitator Trade Dress are invaluable assets essential to BlenderBottle's success and represent the designs of its signature products.   The shape of the Agitator Trade Dress symbolizes the company itself and is part of a registered trademark used by BlenderBottle as its corporate logo.



52.    This logo is prominently displayed on BlenderBottle's website, its marketing materials, stamped and/or molded into its products.

53.    Subsequent to BlenderBottle's use and adoption of the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and BLENDER BALL® Mark, Defendants have developed, manufactured, imported, advertised, and/or sold shaker bottles, lids, and agitators that use trade dress and trademarks that are confusingly similar to the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress, and BLENDER BALL® Mark.

54.    Upon information and belief, Rumi manufactures, uses, sells, offers for sale, promotes, advertises, and/or imports, or has manufactured, used, sold, offered for sale, promoted, advertised, and/or imported into the United States shaker bottles and shaker bottle lids, including some in various sizes and colors, which infringe BlenderBottle's intellectual property rights. A representative infringing shaker bottle is shown below (the "Mr. Pen Shaker Bottle"):

1
2
3
4
5
6
7
8
9
10



11      55.     Upon information and belief, Dius manufactures, uses, sells, offers

12  for sale, promotes, advertises, and/or imports, or has manufactured, used, sold,

13  offered for sale, promoted, advertised, and/or imported into the United States

14  shaker bottles and shaker bottle lids, including some in various sizes and colors,

15  which infringe BlenderBottle's intellectual property rights. A representative

16  infringing Mr. Pen Shaker Bottle is shown above.

17      56.     Upon information and belief, Rumi manufactures, uses, sells, offers

18  for sale, promotes, advertises, and/or imports, or has manufactured, used, sold,

19  offered for sale, promoted, advertised, and/or imported into the United States

20  shaker bottle lids which infringe BlenderBottle's intellectual property rights.  A

21  representative infringing shaker bottle lid is shown below (the "Mr. Pen Shaker

22  Bottle Lid"):

23
24
25
26
27
28



57.     Upon information and belief, Dius manufactures, uses, sells, offers for sale, promotes, advertises, and/or imports, or has manufactured, used, sold, offered for sale, promoted, advertised, and/or imported into the United States shaker bottle lids which infringe BlenderBottle's intellectual property rights.  A representative infringing Mr. Pen Shaker Bottle Lid is shown above.

58.     BlenderBottle is informed and believes that Defendants' Shaker Bottles and Shaker Bottle Lids have been sold and marketed to consumers in the United States and this Judicial District on the internet, including on the Defendants' website, Amazon.com, and Walmart.com.

59.     Upon information and belief, Rumi manufactures, uses, sells, offers for sale, promotes, advertises, and/or imports, or has manufactured, used, sold, offered for sale, promoted, advertised, and/or imported into the United States agitators which infringe BlenderBottle's intellectual property rights. Representative infringing agitators are shown below (the "Mr. Pen Agitators"):

| Mr. Pen Agitator I | Mr. Pen Agitator II |
|---|---|
|  | |

60.    Upon information and belief, Dius manufactures, uses, sells, offers for sale, promotes, advertises, and/or imports, or has manufactured, used, sold, offered for sale, promoted, advertised, and/or imported into the United States agitators which infringe BlenderBottle's intellectual property rights. Representative infringing Mr. Pen Agitators are shown above.

61.    Upon information and belief, BlenderBottle is further informed that Rumi advertised and marketed their infringing Mr. Pen Agitators on Defendants' website using a term identical to BlenderBottle's BLENDER BALL® Mark, as shown below:



62.     Upon information and belief, BlenderBottle is further informed that Dius advertised and marketed their infringing Mr. Pen Agitators on Defendants' website using a term identical to BlenderBottle's BLENDER BALL® Mark, as shown above.

63.     In response to successful complaints filed with Amazon against certain Mr. Pen listings, Plaintiffs received a letter from counsel for Defendant Dius.

64.     Subsequently, Plaintiffs noticed additional Mr. Pen listings that infringed at least Plaintiff's Agitator Trade Dress, and Plaintiffs submitted additional complaints through Amazon.  In response, on January 22, 2024, counsel again sent Plaintiffs a letter regarding the complaints against the Mr. Pen Shaker Bottles filed by Plaintiff with Amazon.com, but this time represented that the response was coming from Defendant Rumi.

65.     Upon information and belief, Defendants Dius and Rumi share common ownership and control.

66.     On April 2, 2024, BlenderBottle sent Defendants a cease-and-desist letter demanding that Defendants cease selling the infringing shaker bottles, lids, agitators and cease use of its BLENDER BALL® Mark. A true and correct copy of this letter is attached as **Exhibit 4**.

67.     BlenderBottle sent additional letters to Defendants reiterating its demands on June 26, 2024, and August 2, 2024.  *See* **Exhibits 5 and 6**.

68.     Despite BlenderBottle's letters, Defendants have refused to cease distributing the infringing products, or to otherwise fully comply with BlenderBottle's demands.

69.     BlenderBottle is informed and believes and, based thereon, alleges that Defendants have intended to blatantly copy BlenderBottle's proprietary designs and trademarks, and pass off their goods as BlenderBottle's high quality

products to misappropriate the immense goodwill that BlenderBottle has spent enormous time, effort, and expense to cultivate in the marketplace.

70.    Defendants use the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress and BLENDER BALL® Mark in connection with identical products sold to identical customers and through overlapping channels of trade and marketing channels.  Defendants' use of the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress and BLENDER BALL® Mark in commerce is likely to cause confusion, cause mistake, and to deceive as to an affiliation, connection, or association of Defendants and/or their products with BlenderBottle, when there is none.

71.    Defendants' acts complained of herein have caused BlenderBottle to suffer irreparable injury to its business.  BlenderBottle will continue to suffer substantial loss and irreparable injury unless and until Defendants are enjoined from its wrongful actions complained of herein.

72.    BlenderBottle is informed and believes, and on that basis alleges that Defendants' acts complained of herein are willful and deliberate.

## I.  COUNT I

**TRADE DRESS INFRINGEMENT, TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, PASSING OFF, AND FEDERAL UNFAIR COMPETITION (15 U.S.C. § 1125(a))**

73.    BlenderBottle repeats and re-alleges the allegations of paragraphs 1-72 of this Complaint as if set forth fully herein.

74.    This is a claim for trade dress infringement, trademark infringement, false designation of origin, passing off, and unfair competition under 15 U.S.C. § 1125(a).

75.    Subsequent to BlenderBottle's use and adoption of the Lid Trade Dress, and the development of secondary meaning in that trade dress,

- 21 -

Defendants have developed, manufactured, imported, advertised, and/or sold products that use trade dress that is confusingly similar to the Lid Trade Dress. An example of Defendants' infringing use of the Lid Trade Dress is shown below in Paragraph 76.

### *Lid Trade Dress:*



76.    Subsequent to BlenderBottle's use and adoption of the Bottle Trade Dress, and the development of secondary meaning in that trade dress, Defendants have developed, manufactured, imported, advertised, and/or sold products that use trade dress that is confusingly similar to the Bottle Trade Dress.  An example of Defendants' infringing use of the Bottle Trade Dress is shown below:

### *Bottle Trade Dress:*



*Infringing Mr. Pen Shaker Bottle and Shaker Bottle Lid:*



77.     Subsequent to BlenderBottle's use and adoption of the Agitator Trade Dress, and the development of secondary meaning in that trade dress, Defendants have developed, manufactured, imported, advertised, and/or sold products that use trade dress that is confusingly similar to the Agitator Trade Dress.  An example of Defendants' infringing use of the Agitator Trade Dress is shown below:

*Agitator Trade Dress:*



*Infringing Mr. Pen Agitators:*



78.    Subsequent to BlenderBottle's use and adoption of the BLENDER BALL® Mark, and the development of secondary meaning in that trademark, Defendants have advertised, and/or sold products using an identical copy of the BLENDER BALL® Mark.

79.    Defendants' use of Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress and BLENDER BALL® Mark in connection with its products is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with BlenderBottle.

80.    Defendants' use of the of Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress and BLENDER BALL® Mark without BlenderBottle's consent, constitutes trade dress infringement, trademark false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such entity with another entity, or as to the origin, sponsorship, or approval of its goods or commercial activities by another entity in violation of 15 U.S.C. § 1125(a).

81.    Defendants' use of the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress and BLENDER BALL® Mark without BlenderBottle's

consent, constitutes trade dress and trademark infringement and false designation of origin in violation of 15 U.S.C. § 1125(a).

82. BlenderBottle is informed and believes, and based thereon alleges, that Defendants infringed BlenderBottle's trade dress and trademark rights with the intent to unfairly compete with BlenderBottle, to trade upon BlenderBottle's reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believing that Defendants' products are associated with, sponsored by, originated from, or are approved by BlenderBottle, when they are not, resulting in a loss of reputation in, and mischaracterization of, BlenderBottle's products and its brand, damaging its marketability and saleability.

83. BlenderBottle is informed and believes, and thereon alleges, that Defendants' acts of trade dress infringement, trademark infringement, false designation of origin, passing off, and unfair competition have been willful and in total disregard of BlenderBottle's proprietary rights, and were done despite Defendants' knowledge that use of the Lid Trade Dress, Bottle Trade Dress, Agitator Trade Dress and BLENDER BALL® Mark was, and is, in direct contravention of BlenderBottle's rights.

84. BlenderBottle is informed and believes, and thereon alleges, that Defendants have derived and received, and will continue to derive and receive, gains, profits, and advantages from Defendants' trade dress and trademark infringement in an amount that is not presently known to BlenderBottle. By reason of Defendants' actions, constituting trade dress and trademark infringement, BlenderBottle has been damaged and is entitled to monetary relief in an amount to be determined at trial.

85. Pursuant to 15 U.S.C. § 1117, BlenderBottle is entitled to recover (1) Defendants' profits, (2) any damages sustained by BlenderBottle, and (3) the

costs of the action. In assessing damages, the Court may enter judgment up to three times actual damages, and in awarding profits, the Court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. The Court may also award BlenderBottle its reasonable attorneys' fees for the necessity of bringing this claim in this exceptional case.

86.     BlenderBottle has been damaged by Defendants' conduct in an amount to be determined at trial.

87.     Due to Defendants' actions, constituting trade dress infringement, trademark infringement, false designation of origin, false or misleading statements, false or misleading description of fact, false or misleading representations of fact, passing off, and unfair competition, BlenderBottle has suffered great and irreparable injury, for which BlenderBottle has no adequate remedy at law.

88.     Defendants will continue its trade dress infringement, trademark infringement, false designation of origin, false or misleading statements, false or misleading description of fact, false or misleading representations of fact, passing off, and unfair competition, to the great and irreparable injury of BlenderBottle, unless and until Defendants are enjoined by this Court.

## II.  COUNT II

### TRADE DRESS AND TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114)

89.     BlenderBottle repeats and re-alleges the allegations of paragraphs 1-88 of this Complaint as if set forth fully herein.

90.     This is a claim for trade dress and trademark infringement arising under 15 U.S.C. § 1114.

91.    BlenderBottle owns U.S. Trademark Registration No. 6,800,019 for its Lid Trade Dress.

92.    Without BlenderBottle's permission, Defendants have used in commerce trade dress that is nearly identical to the Lid Trade Dress. BlenderBottle is informed and believes, and on that basis alleges, that Defendants' infringing use continued and occurred after the registration date of U.S. Trademark Registration No. 6,800,019.    Defendants have infringed BlenderBottle's Lid Trade Dress by using a nearly identical trade dress in connection with the manufacturing, distributing, selling, and/or promoting of Defendants' bottle products that is likely to cause confusion, or to cause mistake, or to deceive.

93.    BlenderBottle owns U.S. Trademark Registration No. 6,245,626 for its Agitator Trade Dress.

94.    Without BlenderBottle's permission, Defendants have used in commerce trade dress that is nearly identical to the Agitator Trade Dress. BlenderBottle is informed and believes, and on that basis alleges, that Defendants' infringing use continued and occurred after the registration date of U.S. Trademark Registration No. 6,245,626.    Defendants have infringed BlenderBottle's Agitator Trade Dress by using a nearly identical trade dress in connection with the manufacturing, distributing, selling, and/or promoting of Defendants' bottle products that is likely to cause confusion, or to cause mistake, or to deceive.

95.    BlenderBottle owns incontestable U.S. Trademark Registration No. 3,515,591 for the mark BLENDER BALL®.

96.    Without BlenderBottle's permission, Defendants have used in commerce a trademark that is identical to the BLENDER BALL® Mark. BlenderBottle is informed and believes, and on that basis alleges, that

Defendants' infringing use continued and occurred after the registration date of U.S. Trademark Registration No. 3,515,591. Defendants have infringed BlenderBottle's BLENDER BALL® Mark by using an identical trademark in connection with the selling and/or promoting of Defendants' bottle products that is likely to cause confusion, or to cause mistake, or to deceive.

97.     BlenderBottle is informed and believes, and on that basis alleges, that Defendants did so with the intent to unfairly compete with BlenderBottle, to trade upon BlenderBottle's reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believing that Defendants' products are associated with, sponsored by, originated from, or are approved by BlenderBottle, when they are not.

98.     BlenderBottle is informed and believes, and on that basis alleges, that Defendants had actual knowledge of BlenderBottle's ownership and prior use of BlenderBottle's Lid Trade Dress, Agitator Trade Dress, and BLENDER BALL® Mark and without the consent of BlenderBottle, has willfully violated 15 U.S.C. § 1114.

99.     Defendants' aforementioned acts have injured BlenderBottle and damaged BlenderBottle in an amount to be determined at trial. By its actions, Defendants have irreparably injured BlenderBottle. Such irreparable injury will continue unless and until Defendants are preliminarily and permanently enjoined by this Court from further violation of BlenderBottle's rights, for which BlenderBottle has no adequate remedy at law.

### III.  <u>COUNT III</u>

**UNFAIR COMPETITION UNDER**
**CALIFORNIA BUSINESS & PROFESSIONS CODE**
**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

100.   BlenderBottle repeats and re-alleges the allegations of paragraphs

- 28 -

1-99 of this Complaint as if set forth fully herein.

101.   This is a claim for unfair competition under California Business & Professions Code §§ 17200, *et seq.*

102.   Defendants' unlawful and intentional business acts, complained of herein, including acts of trade dress infringement, trademark infringement, false designation of origin, passing off, and unfair competition, caused a material diminution in value of BlenderBottle's intellectual property and an infringement of BlenderBottle's trademarks and trade dress and therefore constitutes unfair competition with BlenderBottle in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

103.   Defendants' acts complained of herein constitute unfair competition, and unlawful, unfair, malicious or fraudulent business practices, which have injured and damaged BlenderBottle.

104.   Defendants, by their actions, have irreparably injured BlenderBottle. Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of BlenderBottle's rights, for which BlenderBottle has no adequate remedy at law.

### IV.  <u>COUNT IV</u>

**UNFAIR COMPETITION UNDER CALIFORNIA COMMON LAW**
**(California Common Law)**

105.   BlenderBottle repeats and re-alleges the allegations of paragraphs 1-104 of this Complaint as if set forth fully herein.

106.   This is a claim for common law unfair competition arising under California common law.

107.   Defendants have and continue to willfully and intentionally pass off their products as products of BlenderBottle.

108. Defendants' acts of trade dress infringement, trademark infringement, false designation of origin, passing off, and unfair competition complained of herein constitute trade dress infringement, trademark infringement, and unfair competition under California common law.

109. By virtue of the acts complained of herein, Defendants have willfully and intentionally caused a likelihood of confusion among the purchasing public in this Judicial District and elsewhere, thereby unfairly competing with BlenderBottle in violation of the common law of the State of California.

110. Defendants' aforementioned acts have damaged BlenderBottle in an amount to be determined at trial.

111. Defendants, by their actions, have irreparably injured BlenderBottle. Such irreparably injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of BlenderBottle's rights, for which BlenderBottle has no adequate remedy at law.

112. Defendants' willful acts of unfair competition under California common law constitute fraud, oppression and malice. Accordingly, BlenderBottle is entitled to exemplary damages pursuant to Cal. Civ. Code § 3294(a).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff BlenderBottle prays for judgment in its favor and against Defendants for the following relief:

A.    That the Court find for BlenderBottle and against Defendants on BlenderBottle's claim of trade dress infringement, trademark infringement, false designation of origin, passing off, and unfair competition under 15 U.S.C. § 1125(a).

B.    That the Court find for BlenderBottle and against Defendants on

BlenderBottle's claim of trade dress infringement and trademark infringement under 15 U.S.C. § 1114.

C.   That the Court find for BlenderBottle and against Defendants on BlenderBottle's claim of trade dress infringement, false designation of origin, passing off, and unfair competition under California Business & Professions Code §§ 17200, *et seq.*, and California common law;

D.   That the Court issue a preliminary and permanent injunction against Defendants, their agents, servants, employees, representatives, successors, and assigns, and all persons, firms, or corporations in active concert or activities and from assisting or inducing, directly or indirectly, others to engage in the following activities:

i.   Manufacturing, importing, marketing, displaying, distributing, offering to sell, and/or selling Defendants' products infringing the Bottle Trade Dress and/or Lid Trade Dress and/or Agitator Trade Dress and/or BLENDER BALL® Mark, or any trade dress or trademarks that are not colorably different therefrom;

ii.   using, without authorization, BlenderBottle's Bottle Trade Dress and/or Lid Trade Dress and/or Agitator Trade Dress and/or BLENDER BALL® Mark, or any other trade dress or trademarks that are confusingly similar to BlenderBottle's Bottle Trade Dress and/or Lid Trade Dress and/or Agitator Trade Dress;

iii.   falsely designating the origin of Defendants' products;

iv.   passing off Defendants' products as those of BlenderBottle;

v.   misrepresenting by any means whatsoever, directly or indirectly, the source or sponsorship of any of Defendants' products;

vi.   unfairly competing with BlenderBottle in any manner whatsoever; and

- 31 -

vii.    causing likelihood of confusion or injuries to BlenderBottle's business reputation.

E.    That an accounting be ordered to determine Defendants' profits resulting from its trade dress infringement, trademark infringement, false designation of origin, passing off, and unfair competition;

F.    That BlenderBottle be awarded monetary relief in an amount to be fixed by the Court in its discretion as it finds just as an equitable remedy and as a remedy under 15 U.S.C. § 1117, including all damages sustained by BlenderBottle as a result of Defendants' acts of trade dress infringement, trademark infringement, false designation of origin, passing off, and unfair competition;

G.    That BlenderBottle be awarded monetary relief in an amount to be fixed by the Court in its discretion as it finds just as an equitable remedy and a remedy under 15 U.S.C. § 1117, including all damages sustained by BlenderBottle as a result of Defendants' acts of trade dress infringement, trademark infringement, false designation of origin, passing off, and unfair competition, all profits received by Defendants from sales and revenues of any kind made as a result of its infringing actions, and the costs of this action. That such award of BlenderBottle of damages and profits be trebled pursuant to 15 U.S.C. § 1117;

H.    An Order adjudging that this is an exceptional case under 15 U.S.C. § 1117;

I.    An Order that Defendants' trade dress infringement, trademark infringement, false designation of origin, passing off, and/or federal unfair competition is willful and a trebling of damages under 15 U.S.C. § 1117;

J.    That BlenderBottle be awarded exemplary damages from Defendants pursuant to Cal. Civ. Code § 3294;

K.    An award to BlenderBottle of the attorneys' fees, expenses, and costs incurred by BlenderBottle in connection with this action pursuant to at least 15 U.S.C. § 1117 and/or California common law;

L.    An award of pre-judgment and post-judgment interest and costs of this action against Defendants; and

M.    Such other relief as this Court may deem just and proper.


Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP


Dated: September 26, 2025    By: */s/ Ali S. Razai*
                                             Ali S. Razai
                                             Brian P. O'Donnell
                                             Christian D. Boettcher

                                             *Attorneys for Plaintiffs*
                                             Trove Brands, LLC d/b/a
                                             The BlenderBottle Company and
                                             Runway Blue, LLC

- 33 -

## **DEMAND FOR JURY TRIAL**

Plaintiff BlenderBottle hereby demands a trial by jury on all issues so triable.


Dated: September 26, 2025        By: */s/ Ali S. Razai*
                                                      Ali S. Razai
                                                      Brian P. O'Donnell
                                                      Christian D. Boettcher

                                                      *Attorneys for Plaintiffs*
                                                      Trove Brands, LLC d/b/a
                                                      The BlenderBottle Company and
                                                      Runway Blue, LLC

- 34 -